IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-00129-PAB-KMT

MARK WALTER PAULSEN,

    Plaintiff,

v.

GARETT GEBHART, BVCF TC Manager/Acting BVCF HSA,
CHRIS TEIPEL, BVCF TC Counselor, and
DOUG ROBERTS, BVCF Health Services Administrator,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 110] filed on June 4, 2018. Magistrate Judge Kathleen M. Tafoya recommends that defendants' Motion for Summary Judgment [Docket No. 95] be granted. Docket No. 110 at 13. Plaintiff filed a timely objection. Docket No. 111. In light of plaintiff's pro se status, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

**I. BACKGROUND**

Plaintiff Mark Walter Paulsen is an inmate in the Colorado Department of Corrections ("CDOC"). Movant's Statment of Material Facts ("MSMF") 1; Docket No. 95 at 1, ¶ 1. In July, 2014, plaintiff was transferred to the CDOC's Buena Vista Correctional Facility ("Buena Vista"). MSMF 3.

Plaintiff has the hepatitis C virus ("HCV"). MSMF 4. In order to receive HCV treatment under the CDOC's guidelines, an inmate must complete a drug and alcohol treatment program. MSMF 5. One such program is the Therapeutic Community program (the "program"), which uses group therapy. MSMF 6. The program at Buena Vista lasts for approximately twelve months. MSMF 7.[1] Plaintiff began the program on August 6, 2014. MSMF 9. Defendant Chris Teipel was plaintiff's counselor during the program and documented plaintiff's progress. MSMF 10-11. Mr. Teipel noted that plaintiff regularly missed group time and work assignments. MSMF 12.

While plaintiff was in the program, defendant Garett Gebhart became the manager of the program and acted as the Health Services Administrator ("HSA"), administrating the medical, mental health, and drug and alcohol teams at Buena Vista. MSMF 14-17. In April 2015, Mr. Gebhart responded to a "kite" from plaintiff requesting

---

[1] Plaintiff purports to dispute some of the asserted material facts in MSMF, including that the program lasted twelve months. *See* Docket No. 111 at 1. Plaintiff's response did not, however, have any evidence attached or cite any evidence already in the record as required to support a factual position at the summary judgment stage under Fed. R. Civ. P. 56(c)(1). Docket No. 103; *see also* Practice Standards (Civil Cases), Judge Philip A. Brimmer § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial."). Further, plaintiff's response did not indicate whether he admits or denies the asserted facts in MSMF or provide a section indicating any additional facts that he believes are disputed as required by the Court's practice standards. *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer §§ III.F.3.b.iv ("Any party opposing the motion for summary judgment shall, in a section of the brief . . . styled 'Response to Statement of Undisputed Material Facts,' admit or deny the asserted material facts set forth by the movant."), § III.F.3.b.v (requiring that "additional **disputed** questions of fact" be set out "in a separate section of the party's brief styled 'Statement of Additional Disputed Facts.'"). Because of plaintiff's failure to provide evidence supporting his positions as required by Fed. R. Civ. P. 56(c)(1) and his failure to follow the Court's practice standards, the Court deems the facts recounted in this background section admitted. *See* Fed. R. Civ. P. 56(e)(2). As discussed below, plaintiff's submission of evidence with his objection is unavailing.

the HCV protocol by sending plaintiff a portion of it.  MSMF 19.  In June 2015, Mr. Gebhart responded to a kite from plaintiff asking why HCV treatment had not been started even though he had been in the program for six months.  MSMF 20.  Mr. Gebhart responded that plaintiff had to complete the program before he could receive HCV treatment.  *Id*.  Plaintiff completed the program on July 22, 2015, fifty weeks after beginning the program.  MSMF 13.

In mid-August 2015, defendant Doug Roberts became Buena Vista's HSA.  MSMF 23.  In this position, he administratively supervised Mr. Gebhart, but he did not supervise medical treatment decisions.  MSMF 24, 25.

On January 19, 2016, plaintiff filed his complaint in this case.  Docket No. 1.  On March 18, 2016, Judge Lewis T. Babcock dismissed certain defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) because the claims against them were legally frivolous and assigned the remaining claims to this Court.  Docket No. 7 at 4.  On March 29, 2017, the Court granted in part motions to dismiss filed by the then-remaining defendants.  Docket No. 52 at 9.  Plaintiff's remaining claims are brought pursuant to 42 U.S.C. § 1983 under the First Amendment for retaliation and under the Eighth Amendment for deliberate indifference to his medical needs against Messrs. Gebhart, Teipel, and Roberts.  Docket No. 1 at 8-11, 17; *see also* Docket Nos. 7, 52.[2]  On November 9, 2017, defendants filed their motion for summary judgment seeking summary judgment as to each of these claims.  Docket No. 95.

---

[2] Plaintiff has filed another case bringing claims related to the denial of HCV treatment before he was transferred to Buena Vista.  *Paulsen v. Roberts*, No. 15-cv-00800-PAB-KMT (D. Colo. filed April 15, 2015) ("*Roberts*").

3

## II. STANDARDS OF REVIEW

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). To be sufficiently specific, an objection must "enable[] the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *See id.* at 1059 (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). In the absence of a proper objection, the Court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas*, 474 U.S. at 150 ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a

verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, when "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

III. ANALYSIS

Plaintiff objects to the Recommendation with respect to both his deliberate

5

indifference claim and his retaliation claim. Docket No. 111 at 1, 4. Plaintiff, however, argues retaliation with respect to only Mr. Teipel. *Id*. at 12; *see also* Docket No. 103 at 2-4. The Court sets out the legal standards for each claim and then discusses each defendant in turn.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("The Eighth Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200 (1989))). "The analysis [of an Eighth Amendment claim] should not be based on 'a court's idea of how best to operate a detention facility,'" but should reflect "the evolving standards of decency that mark the progress of a maturing society," which the Tenth Circuit has characterized as a "lofty standard." *DeSpain v. Uphoff*, 264 F.3d 965, 973-74 (10th Cir. 2001) (citing *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981)). To prevail on his claim that a defendant violated the Eighth Amendment, plaintiff must show that (1) objectively, the harm he complains of is sufficiently "serious" to merit constitutional protection and (2) the defendant was subjectively aware of a substantial risk to plaintiff's health or safety and acted in purposeful disregard of that risk. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Smith v. Maschner*, 899 F.2d

6

940, 947 (10th Cir. 1990). "Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

### A. Defendant Teipel

Plaintiff claims that Mr. Teipel delayed his graduation from the program as a result of deliberate indifference and in retaliation for plaintiff's law library usage. Docket No. 1 at 11. Based on the approximately twelve-month length for the program in the Overview of Therapeutic Community form that plaintiff signed, the magistrate judge found that plaintiff could not show that he was harmed by a delay caused by Mr. Teipel because plaintiff graduated in less than twelve months; "thus there was no delay." Docket No. 110 at 7. Plaintiff argues that the magistrate judge erred in finding that it was undisputed that he graduated early from the program because the program actually required nine months to complete, not twelve. *See* Docket No. 111 at 1. Plaintiff, however, bases his argument on one page from a document entitled "Prevention Identification and Treatment of Viral Hepatitis C" that he attached to his objection to the Recommendation. Docket No. 111 at 12. By failing to provide such evidence in response to the summary judgment motion, plaintiff is not able to belatedly create an issue of material fact through his objection. Moreover, plaintiff did not contest that the

7

program at Buena Vista lasts approximately twelve months. MSMF 7; *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." (citations omitted)). As a result, plaintiff does not demonstrate that the magistrate judge committed error in finding that plaintiff failed to show any delay, which is his alleged harm.

Moreover, the Court finds that summary judgment is appropriate because plaintiff has not shown that there is a genuine issue of material fact with respect to the cause of his extended time in the program. Defendants provide numerous clinical notes, written by Mr. Teipel, indicating that plaintiff missed many program group activities and failed to complete assignments on time because he chose, instead, to go to the law library. *See, e.g.*, Docket No. 95-2 at 11 ("He is losing group time due to frequent trips to [the] law library"), 26 ("He continues to blame on the law librarian his frequent absences from [program] groups in order to attend the law-library." [sic]), 52 ("He is missing groups due to attendance in the Law Library."). The clinical notes indicate that plaintiff's progress in the program was delayed as a result of such absences. *See, e.g., id*. at 34 ("He has chosen to miss groups in favor of [going to the] law library, and as a result his promotion to the next phase may be delayed."), 48 ("Client's progress this week in his Service Plan goals is none. He has attended a few groups, and is losing credit for ones he misses."), 52 ("[Plaintiff] was informed . . . that he will not be given TC credit for days that he does not attend the treatment group. He said he is OK with this, and that his legal motions should be filed in three weeks, at which time his participation level will become normal."). Based on this evidence,

program at Buena Vista lasts approximately twelve months. MSMF 7; *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." (citations omitted)). As a result, plaintiff does not demonstrate that the magistrate judge committed error in finding that plaintiff failed to show any delay, which is his alleged harm.

Moreover, the Court finds that summary judgment is appropriate because plaintiff has not shown that there is a genuine issue of material fact with respect to the cause of his extended time in the program. Defendants provide numerous clinical notes, written by Mr. Teipel, indicating that plaintiff missed many program group activities and failed to complete assignments on time because he chose, instead, to go to the law library. *See, e.g.*, Docket No. 95-2 at 11 ("He is losing group time due to frequent trips to [the] law library"), 26 ("He continues to blame on the law librarian his frequent absences from [program] groups in order to attend the law-library." [sic]), 52 ("He is missing groups due to attendance in the Law Library."). The clinical notes indicate that plaintiff's progress in the program was delayed as a result of such absences. *See, e.g., id*. at 34 ("He has chosen to miss groups in favor of [going to the] law library, and as a result his promotion to the next phase may be delayed."), 48 ("Client's progress this week in his Service Plan goals is none. He has attended a few groups, and is losing credit for ones he misses."), 52 ("[Plaintiff] was informed . . . that he will not be given TC credit for days that he does not attend the treatment group. He said he is OK with this, and that his legal motions should be filed in three weeks, at which time his participation level will become normal."). Based on this evidence,

defendant argues that, "[i]f Plaintiff spent more time than he anticipated in the program, Plaintiff himself caused any such delay by regularly missing meetings and failing to submit homework on time."  Docket No. 95 at 8.

Plaintiff does not dispute that he spent a significant amount of time in the law library and that he missed program sessions and activities as a result.  *See* Docket No. 111 at 2.  He also does not dispute that he was required to attend program sessions in order to make progress or that his failure to do so would lead to delays.  *See id.*  Plaintiff argues, however, that the lack of progress was actually retaliation for his using the law library and that such retaliation is the source or his delayed progress in the program.  Docket No. 111 at 2.  But plaintiff does not present any evidence that would support an inference that the program delays were caused by retaliation related to his law library usage as opposed to the fact that his law library usage resulted in him missing activities necessary for him to progress in the program.  *See* Docket No. 103 at 2-3.  In particular, there is no evidence that supports an inference that Mr. Teipel had a motive to retaliate against plaintiff for using the law library such that "'but for' the retaliatory motive, the incidents to which he refers, . . . would not have taken place."  *Maschner*, 899 F.2d at 947 (citations omitted); *see also Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  Notably, Mr. Teipel is not a party to plaintiff's prior lawsuit, which would have been pending at that time, and relates only to events that occurred at a different prison.  *See Roberts*, No. 15-cv-00800-PAB-KMT, Docket No. 10.[3]  Plaintiff notes that Mr. Teipel asked about his law library use, Docket No. 111 at 2, but there is

---

[3] Mr. Roberts is a defendant in both actions because he held positions related to health care for each prison during the period plaintiff was incarcerated there.

no reason to infer sinister motives behind such questions based on the summary judgment record; after all, there is ample evidence that plaintiff's law library usage was negatively impacting plaintiff's participation in the program for which Mr. Teipel was plaintiff's counselor. MSMF 10. Likewise, plaintiff has not provided evidence that his alleged delay in graduating was caused by Mr. Teipel's deliberate indifference to his medical situation, as opposed to plaintiff's spotty attendance and failure to complete required assignments on time. Because plaintiff has not shown a genuine issue of material fact that Mr. Teipel improperly delayed plaintiff's completion of the program and attendant receipt of HCV treatment, the Court will grant summary judgment on plaintiff's claims against Mr. Teipel. *See Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 1135 (D. Colo. 2010) ("It is well-established that in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must provide not only a constitutional violation, but also demonstrate that the constitutional deprivation caused him some actual injury." (citing *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993))).

### B. Defendant Gebhart

Plaintiff claims that Mr. Gebhart was deliberately indifferent to his medical needs in failing to adequately respond to his requests for HCV treatment. Docket No. 1 at 9-11. In particular, plaintiff claims that Mr. Gebhart failed to confirm with CDOC that plaintiff completed the program, resulting in a delay in treatment. *Id*. at 10. The magistrate judge found that plaintiff "attempts to merely rely on his own assertions and disagreement regarding procedure, instead of presenting evidence of causation – that Defendant Gebhart was actually required to submit the [program] completion form, and

10

that he had subjective knowledge that delay or failure to do so would result in significant medical impairment." Docket No. 110 at 9-10. By contrast, the magistrate judge noted that Mr. Gebhart "submitted p[r]oof that Plaintiff was on notice that . . . the drug and alcohol staff was not responsible for determining whether Plaintiff would qualify for Hepatitis C treatment [and] informed Plaintiff that Plaintiff's medical provider would direct him to 'complete the appropriate form for treatment consideration.'" *Id*. at 10 (quoting Docket No. 95-6 at 3).

Plaintiff objects that "Gephardt was responsible for assuring that the required verification was submitted so the Plaintiff could receive much needed [HCV treatment]" and that the suggestion that the program is not "connected to the medical department [in] regards to HCV [treatment] document forms is absurd." Docket No. 111 at 7. Plaintiff's argument appears to be that Mr. Gebhart failed to assure that forms were submitted on his behalf.

The evidence in the summary judgment record shows that, in response to plaintiff's kites, Mr. Gebhart told plaintiff what he needed to do to be considered for treatment. Docket No. 95-6 at 1, 3. There is no evidence that Mr. Gebhart failed to do anything that prevented plaintiff from being considered for treatment by the medical staff had plaintiff done as instructed. *See id*.; *Dodge*, 695 F. Supp. 2d at 1135 ("It is well-established that in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must provide not only a constitutional violation, but also demonstrate that the constitutional deprivation caused him some actual injury." (citation omitted)). The Court agrees with the magistrate judge that the plaintiff has not presented evidence showing a genuine issue of material fact with respect to whether Mr. Gebhart's actions caused his

treatment to be delayed. *See Celotex,* 477 U.S. at 324. Therefore, the Court will accept the recommendation that summary judgment be granted as to plaintiff's claims against Mr. Gebhart.

C. **Defendant Roberts**

Plaintiff claims that Mr. Roberts caused a delay in his treatment by failing to assure that CDOC addressed plaintiff's lack of care. Docket No. 1 at 9. In particular, plaintiff claims that he discussed Mr. Gebhart's responses to his kites with Mr. Roberts, which indicated that plaintiff "must complete the TC program prior to any treatment beginning," Docket No. 95-6 at 3, but that Mr. Roberts told plaintiff, instead, he had to wait six months after starting the program. *Id.*[4] Plaintiff notes that Mr. Roberts spoke to Mr. Gebhart, who told Mr. Roberts that plaintiff had completed the program, but plaintiff nonetheless did not start receiving treatment. Docket No. 111 at 5. Plaintiff claims that he was harmed because Mr. Roberts "did nothing to ensure that the lack of care issue

---

[4] Plaintiff refers at various points to an expectation that HCV treatment could begin after he participated in the program for six months, and claims that Mr. Roberts stated as much. *See, e.g.*, Docket No. 111 at 8. Although it is not relevant to the disposition of this case, there is no evidence in the summary judgment record, apart from Mr. Roberts' alleged statement, that plaintiff was eligible for HCV treatment after completing six months of the program. Rather, the evidence indicates that plaintiff had to complete the program in order to be eligible for treatment. MSMF 5; Docket No. 95-6 at 3; Docket No. 111 at 12. Plaintiff and Mr. Roberts' understanding to the contrary is perhaps due to the HCV treatment protocol in effect prior to 2013. *See Roberts*, No. 15-cv-00800-PAB-KMT, Docket No. 157 at 3, ¶¶ 7-8 (citing Docket No. 157-3 at 11) ("The offender has signed the contract for Substance Abuse Education Class, enrolled and completed six months of substance abuse education prior to liver biopsy."). But the policies adopted in 2013 and afterward appear to have dropped the provision for a liver biopsy any time before a drug and alcohol program was completed. *See Roberts*, No. 15-cv-00800-PAB-KMT, Docket No. 158-2 at 6 ("The offender must complete drug and alcohol treatment as determined appropriate by CDOC drug and alcohol program and outlined in AR 700-20 . . . prior to liver biopsy or approval for hepatitis C treatment.").

12

was addressed or ever followed up on, resulting in a delay or deprivation of treatment." *Id*. The magistrate judge found that plaintiff had not shown that Mr. Roberts was "directly involved in any constitutional violation" and that plaintiff "has, at best, shown that Defendant Roberts negligently failed to ensure that Defendant Gebhart submitted documents," which is insufficient to show deliberate indifference. Docket No. 110 at 8.

Plaintiff objects that Mr. Roberts "knew about problems the Plaintiff was having" receiving HCV treatment and "should have been well aware of the rules and regulations provided by the HCV protocol" pertaining to HCV treatment. Docket No. 111 at 4-5. Plaintiff argues that, as the HSA, Mr. Roberts "should have been aware of the dangers the Plaintiff would/could face left untreated" because of his declining health and related test results. *Id*. at 5. Plaintiff does not, however, dispute Mr. Roberts' statement that he had "only a working understanding of HCV." Docket No. 95-4 at 2, ¶ 7. Instead, plaintiff argues that Mr. Roberts only needed to follow the HCV treatment protocol and ensure that it was followed by his subordinates. Docket No. 111 at 6.

The evidence in the summary judgment record indicates that, regardless of Mr. Roberts' awareness of plaintiff's condition, Mr. Roberts did not understand that a delay in HCV treatment presented a serious health risk to plaintiff. Mr. Roberts states in his declaration that he understood HCV as a chronic condition that "affects only a low percentage of carriers with increased health risks" and, "[r]egarding the delay in treating HCV, [his] understanding was that such delay did not impact the course of treatment and that delay did not lead to adverse health effects." *See* Docket No. 95-4 at 2, ¶¶ 7-8. While plaintiff argues that Mr. Roberts "should have" been aware that a delay in treatment would cause plaintiff a significant health risk, even if plaintiff is correct, the

13

fact that Mr. Roberts should have been aware of a risk is insufficient to support a claim for deliberate indifference. *Farmer*, 511 U.S. at 837 ("[A] a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Because plaintiff has not shown that there is a genuine issue of material fact as to whether Mr. Roberts actually understood that inaction could result in serious medical harm to plaintiff, the Court will grant defendants' motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 110] filed on June 4, 2018 is **ACCEPTED**. It is further

**ORDERED** that defendants' Motion for Summary Judgment [Docket No. 95] is **GRANTED**. It is further

**ORDERED** that judgment shall enter in favor of defendants and against plaintiff. It is further

**ORDERED** that, within 14 days of the entry of this Order, defendants may have their costs by filing a Bill of Costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED September 18, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge